AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE: _____ 7-10-19

# UNITED STATES DISTRICT COURT
for the

_____WESTERN_____ DISTRICT OF _____OKLAHOMA_____

In the Matter of the Search of                              )
*(Briefly describe the property to be searched*             )
*or identify the person by name and address)*               )     Case No: MJ-19-370-BMJ
  A Samsung Galaxy S9 Cell Phone, IMEI:                )
359929090187599; a Samsung Galaxy S-10                      )
Plus Cell Phone Model: SM-G9754, S/N:                       )
R58M36TGV40, IMEI: 356021100875794;                        )     **FILED**
a HP Envy x360 Laptop Computer, S/N:                        )
8CG75146HK; and a Samsung Galaxy                            )     JUL 1 0 2019
S7 Cell Phone, IMEI: 358518070389167,                      )     CARMELITA REEDER SHINN, CLERK
All Currently in Secure Evidence Storage                    )     U.S. DIST. COURT, WESTERN DIST. OKLA.
at the Drug Enforcement Administration                      )     BY _____ DEPUTY
Office in Oklahoma City, Oklahoma                           )

### APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following [Person or Property?] *(identify the person or describe property to be searched and give its location)*:

    See Attachment A, which is incorporated by reference herein.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

    See Attachment B, which is incorporated herein.

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
- ☒   evidence of the crime;
- ☒   contraband, fruits of crime, or other items illegally possessed;
- ☐   property designed for use, intended for use, or used in committing a crime;
- ☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 18 U.S.C. § 545 | Unlawful Importation |
| 21 U.S.C. § 841(a)(1) | Manufacturing of a Controlled Substance |
| 18 U.S.C. § 2320(a) | Trafficking Counterfeit Goods |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. § 924(c)(1)(A) | Possession of Firearm in Furtherance of Drug-Trafficking |

The application is based on these facts:

See attached Affidavit of Special Agent Gerard Dauphinais, Drug Enforcement Administration, which is incorporated by reference herein.

☐   Continued on the attached sheet(s).

☐   Delayed notice of [No. of Days]   days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

Gerard Dauphinais
Special Agent
Drug Enforcement Administration

Sworn to before me and signed in my presence.

Date:   __7/10/19_____

_____
*Judge's signature*

City and State:   Oklahoma City, Oklahoma

Bernard M. Jones, U.S. Magistrate Judge_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF
A SAMSUNG GALAXY S9 CELL
PHONE, IMEI: 359929090187599; A
SAMSUNG GALAXY S-10 PLUS
CELL PHONE MODEL: SM-G9754,
S/N: R58M36TGV40, IMEI:
356021100875794; A HP ENVY x360
LAPTOP COMPUTER, S/N:
8CG75146HK; AND A SAMSUNG
GALAXY S7 CELL PHONE, IMEI:
358518070389167, ALL
CURRENTLY IN SECURE
EVIDENCE STORAGE AT THE
DRUG ENFORCEMENT
ADMINISTRATION OFFICE IN
OKLAHOMA CITY, OKLAHOMA

Case No. _____

## AFFIDAVIT IN SUPPORT OF_
## AN APPLICATION FOR A SEARCH WARRANT

I, Gerard Dauphinais, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Drug Enforcement Administration

(DEA), United States Department of Justice, and have served in that

capacity since 1996. I am currently assigned to the Tactical Diversion Squad

(TDS) at the Oklahoma City District Office (OCDO) located in Oklahoma

City, OK. In January 1997, I completed approximately sixteen (16) weeks of

training at the DEA Basic Agent Academy in Quantico, Virginia that

provided instruction on narcotics investigations, use of confidential sources, surveillance, interviews and interrogation, proper search and seizure, and arrest procedures as required to become a Special Agent with the DEA. Prior to the DEA, I was a police officer with the Los Angeles Police Department for two years and have experience investigating many types of criminal conduct.

2.      During my career as a DEA Special Agent, I have investigated violations of the Controlled Substances Act involving illegal narcotics trafficking. Through these investigations and the training mentioned above, I have become familiar with investigative methods and techniques regarding drug trafficking and money laundering. I am familiar with and have participated in standard methods of investigation, including, but not limited to, visual surveillance, questioning witnesses, the use of search and arrest warrants, the use of informants, the use of electronic surveillance, the monitoring and analysis of cellular telephone usage and data, and the use of undercover agents. I am familiar with the methods of operation and terminology used by drug traffickers as well as methods of laundering drug trafficking proceeds. I have experience debriefing defendants, witnesses, confidential sources, and other persons who have knowledge of the distribution and transportation of controlled substances. I know from training, experience, and experiences related to me by other agents that

persons involved in drug trafficking frequently utilize cellular telephones to further the distribution of illicit and/or counterfeit illicit substances.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. As a Special Agent with the DEA, I am vested with the authority to investigate violations of Titles 21 and 18 of the United States Code. The facts contained in this affidavit were discovered by me or related to me by other Law Enforcement Officers.

4.     I am investigating **Patrick TRAVIS** and **Miranda RHYNARD** for their part in involvement in violations of the following Federal statutes: 21 U.S.C. § 846 (Drug Conspiracy); 18 U.S.C. § 545 (Unlawful Importation of Viagra); 21 U.S.C. § 841(a)(l) (Manufacturing Anabolic Steroids); 18 U.S.C. § 2320(a) (Trafficking Counterfeit Goods to wit Viagra); and 21 U.S.C. § 841(a)(l) (Possession with Intent to Distribute Anabolic Steroids). In addition, **TRAVIS** is also charged with 18 U.S.C. § 924(c)(l)(A) (Possession of Firearm in Furtherance of Drug Trafficking). This Affidavit is submitted for the purpose of securing a search warrant authorizing a search of the following electronic devices: a Samsung Galaxy S9 cell phone, IMEI: 359929090187599 ("**SUBJECT DEVICE 1**"); a Samsung Galaxy S-10 Plus cell phone Model: SM-G9754, S/N: R58M36TGV40, IMEI: 356021100875794 ("**SUBJECT DEVICE 2**"); a HP Envy x360 Laptop Computer, S/N:

8CG75146HK ("**SUBJECT DEVICE 3**"); and a Samsung Galaxy S7 cell

phone, IMEI: 358518070389167 ("**SUBJECT DEVICE 4**"), as further

described in **Attachment A,** which is incorporated into this Affidavit by

reference. The DEA has custody of all the **SUBJECT DEVICES** in

Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a

search warrant authorizing a search of all the **SUBJECT DEVICES** for the

items specified in **Attachment B** hereto, wherever they may be found, and to

seize all items in **Attachment B** as instrumentalities, fruits, and evidence of

the aforementioned crimes.

5.      Since this Affidavit is being submitted for the limited purpose of

securing a search warrant, I have not included each and every fact known to

me regarding this investigation. I have set forth only the facts that I believe

are necessary to establish probable cause to support the issuance of a search

warrant. The information contained in this Affidavit is based upon my personal

knowledge and observation, my training and experience, conversations with

other law enforcement officers and witnesses, and review of documents and

records.

## BACKGROUND OF INVESTIGATION

6.      In October 2018, federal authorities at the FedEx Super Hub in

Memphis, Tennessee, interdicted an encapsulating machine and a bulk

shipment of empty capsules addressed to **TRAVIS** at 2360 E. Tower Rd, in

Ponca City, Oklahoma. Encapsulating machines are machines that are used to create pills. Specifically, encapsulating machines are designed to fill hard or soft gelatin capsules with a number of substances, including powders. A check of State of Oklahoma databases suggests that **TRAVIS** has no medical licenses that might explain his need for or possession of an encapsulating machine, nor did **TRAVIS** register the machine as per 21 U.S.C. § 830(b)(1)(D) and 21 C.F.R. § 1310.05(c). The failure to make the required report is a violation of 21 U.S.C. § 842(a)(10), and the encapsulating machine was subject to forfeiture under 21 U.S.C. § 881(a)(9).

7.      On November 1, 2018, investigators traveled to 2360 E. Tower Rd, Ponca City and interviewed **TRAVIS** regarding his purchase and attempted delivery of the encapsulating machine. Investigators utilized a copy of the original shipping label for the encapsulating machine from FedEx to call **TRAVIS** at 806-440-9183, which is currently associated with **SUBJECT DEVICE 1**. **TRAVIS** answered **SUBJECT DEVICE 1** and met with investigators. **TRAVIS** was asked about his activities surrounding the purchase of the encapsulating machine and gelatin capsules.

8.      **TRAVIS** stated that he and his fiancée (**RHYNARD**), owned an online company called SWOLESCRIPTZ (accessible via the internet at SWOLESCRIPTZ.COM) and had just gotten the company established in September of 2018 (however, through open source records from Facebook and

SWOLESCRIPTZ.COM, it was evident that SWOLESCRIPTZ had business activity as far back as July 2018). **TRAVIS** claimed SWOLESCRIPTZ manufactured health supplements and he had ordered the gelatin capsules and the encapsulating machine because customers preferred gelatin capsules. **TRAVIS** was shown the shipment and he stated he recognized the encapsulating machine and capsules as items he ordered on the internet. When asked where he learned how to mix and manufacture pills and tablets, **TRAVIS** stated "YouTube". **TRAVIS** said he paid $1,000.00 for the encapsulating machine. **TRAVIS** indicated he utilized a company called CapsulCN.com to order the encapsulating machine and paid for it via PayPal, using an account under his name "Patrick TRAVIS."

9.     **TRAVIS** stated that he ordered supplement ingredients and had some on-site, but had no finished products to show investigators. Investigators had previously observed bottles advertised as "Viagra" and "Cialis" on the SWOLESCRIPTZ.COM website, among other items packaged in a retail-like manner listed for sale on the website. Investigators asked **TRAVIS** for consent to do a quick check of his health supplement operation. **TRAVIS** declined to give consent to search the location stating that he had "a big dog up there that's sleeping and I don't want to wake him." When investigators told **TRAVIS** that a dog sleeping did not seem like a legitimate

reason to not allow them to inspect his operation, **TRAVIS** repeated that he did not want to allow investigators on the property.

10.     While investigators were speaking with **TRAVIS, RHYNARD** arrived at the location. Investigators approached **RHYNARD** and asked her about the manufacturing activities of **TRAVIS** and SWOLESCRIPTZ.COM. **RHYNARD** explained that she and **TRAVIS** were partners and that SWOLESCRIPTZ.COM was doing well enough that she and **TRAVIS** had quit their jobs in March 2018, and had only been working selling supplements using SWOLESCRIPTZ.COM since then. **RHYNARD** explained that they previously had a hand press, but now they use an electric press that they purchased at the beginning of the year (2018). **RHYNARD** explained that the electric press, which compresses powders to make tablet pills, was ordered from overseas, because they are more expensive if order domestically. When asked if the tableting machine she had just mentioned was present at their location, **RHYNARD** confirmed that the electric press was currently at their location. **RHYNARD** gave investigators her telephone number of 580-304-9126, which is currently associated with **SUBJECT DEVICE 2,** and stated that she and **TRAVIS** are the SWOLESCRIPTZ.COM website administrators.

11.     **RHYNARD** stated she and **TRAVIS** both owned the trailer which contained the pill machines and the substances used to manufacture

their "supplements". **RHYNARD** was asked if she would consent to a search of the property, understanding that any illegal substances found, as well as the tablet press, would have to be seized. **RHYNARD** gave investigators consent to search the trailer (with **TRAVIS** present). **TRAVIS** did not demonstrate any objection to the search.

12.     Upon searching the trailer, investigators discovered three pill presses (two electric and one hand crank) and numerous powders and substances in various parts of the trailer. There were several pill bottles on the table, some of which had SWOLESCRIPTZ labels on them with "Viagra" as the contents. A large number of bags of powder from China, as well as pills and other powder from unknown sources, was discovered in the trailer and seized. In total, over 4.5 pounds of analyzed and confirmed anabolic steroids (a Schedule III controlled substance) were seized from the trailer among the 87 drug exhibits seized.[1] In addition, investigators also seized a black Kel-Tec pistol from inside the trailer where the drugs were seized.

13.     On June 4, 2019, a Federal Grand Jury in the Western District of Oklahoma returned an indictment against **TRAVIS** and **RHYNARD** on violations of 21 U.S.C. § 846 (Drug Conspiracy); 18 U.S.C. § 545 (Unlawful Importation of Viagra); 21 U.S.C. § 841(a)(l) (Manufacturing Anabolic

_____

[1] Only 13 of the 87 drug exhibits have been analyzed to date.

Steroids); 18 U.S.C. § 2320(a) (Trafficking Counterfeit Goods to wit Viagra); and 21 U.S.C. § 841(a)(l) (Possession with Intent to Distribute Anabolic Steroids). In addition, **TRAVIS** was indicted for 18 U.S.C. § 924(c)(l)(A) (Possession of Firearm in Furtherance of Drug Trafficking).

14. On June 11, 2019, **TRAVIS** and **RHYNARD** were arrested in Ponca City, Oklahoma pursuant to the arrest warrants issued against them in connection to the indictment. At the time of their arrests, **TRAVIS** was in possession of **SUBJECT DEVICE 1** and **SUBJECT DEVICE 4**, and **RHYNARD** was in possession of **SUBJECT DEVICE 2. TRAVIS** was arrested in his vehicle and stated he was on his way to 2360 E. Tower Road. Inside **TRAVIS'** vehicle, investigators seized a number of controlled substances similar to what was found at the other search locations. At the time of her arrest and after she had been given Miranda warnings, **RHYNARD** stated that **TRAVIS** ordered the products to be mixed, manages the money side of the business, and calculates the recipes for the products. **RHYNARD** stated that she filled the capsules with the products.

15. On the same day, investigators executed search warrants at two locations: 1017 N. Waverly Street #15, Ponca City (**TRAVIS**'s residence) and a trailer located at 2360 E. Tower Road, Ponca City (the current location where **TRAVIS** and **RHYNARD** manufactured and distributed their illegal substances). During the searches, investigators discovered and seized known

Schedule III controlled substances at both locations, some of which matched
the drugs seized from **TRAVIS** and **RHYNARD** during the consent search on
November 1, 2018. In total, approximately nine pounds of anabolic steroids
were seized from the locations searched on June 11, 2019. Investigators also
located and seized **SUBJECT DEVICE 3** during the search of the trailer at
2360 E. Tower Road.

## PROBABLE CAUSE

16.     There is probable cause to believe that TRAVIS and RHYNARD
used **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**,
and **SUBJECT DEVICE 4** to further their illegal drug (both controlled
substances and counterfeit goods) manufacturing and distribution activities
for at least the following reasons:

a.    Based upon my training and experience, I am aware that
individuals involved in trafficking illegal narcotics often use cell
phones in furtherance of their drug trafficking business.

b.    **TRAVIS** and **RHYNARD** operated a laboratory where they
manufactured illegal drugs and distributed them through a
website. Further investigation has revealed that, in addition to the
website, **TRAVIS** and **RHYNARD** also utilized social media sites
such as Facebook and Instagram and Google mail (email) to
advertise their illegal activities and to conduct business with

customers. Based on my training and experience, I know that people utilize their cell phones and laptop computers to access websites, social media, and email.

c.     Furthermore, I also know, based on my training and experience, that cell phones and laptop computers often contain electronically stored information which constitutes evidence, fruits, and instrumentalities of the drug-trafficking offenses being committed, including, but not limited to, contact lists, calendars, electronic messages, e-mail messages, chat logs, photographs, videos, notes, and data files. Consequently, I submit there is probable cause to believe that **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4**, which were recovered from **TRAVIS** and **RHYNARD** at the time of their arrest, will contain evidence of drug trafficking.

17.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2, SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on **SUBJECT**

**DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4** because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is

not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4** to human inspection in order to determine whether it is evidence described by the warrant.

19.    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20.    Based on the above information, there is probable cause to believe that violations of 21 U.S.C. § 846; 18 U.S.C. § 545; 21 U.S.C. § 841(a)(l); 18 U.S.C. § 2320(a); 21 U.S.C. § 841(a)(l); and 18 U.S.C. § 924(c)(l)(A) have occurred, and that evidence, fruits, and instrumentalities of this offense are located on **SUBJECT DEVICE 1**, **SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4**. Therefore, I respectfully

request that this Court issue a search warrant for **SUBJECT DEVICE 1**,

**SUBJECT DEVICE 2**, **SUBJECT DEVICE 3**, and **SUBJECT DEVICE 4**,

authorizing the seizure of the items described in Attachment B.

_____
Gerard Dauphinais
Special Agent
Drug Enforcement Administration


SUBSCRIBED AND SWORN to before me this ___10th___ day of July, 2019.

_____
BERNARD M. JONES
United States Magistrate Judge

## ATTACHMENT A

## <u>DESCRIPTON OF DEVICES TO BE SEARCHED</u>

1. A Samsung Galaxy S9 cell phone, IMEI: 359929090187599 (**"SUBJECT DEVICE 1"**)

2. A Samsung Galaxy S-10 Plus cell phone (Model: SM-G9754, S/N: R58M36TGV40, IMEI: 356021100875794 (**"SUBJECT DEVICE 2"**)

3. A HP Envy x360 Laptop Computer, S/N: 8CG75146HK (**"SUBJECT DEVICE 3"**)

4. A Samsung Galaxy S7 cell phone, IMEI:358518070389167 (**"SUBJECT DEVICE 4"**)

Such searches will be conducted by law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control).



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of the criminal offense, contraband, the fruits of the crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 21 U.S.C. § 846; 18 U.S.C. § 545; 21 U.S.C. § 841(a)(l); 18 U.S.C. § 2320(a); 21 U.S.C. § 841(a)(l); and 18 U.S.C. § 924(c)(l)(A):

1.      All records on the devices described in Attachment A that relate to violations of 21 U.S.C. § 846; 18 U.S.C. § 545; 21 U.S.C. § 841(a)(l); 18 U.S.C. § 2320(a); 21 U.S.C. § 841(a)(l); and 18 U.S.C. § 924(c)(l)(A) involving Patrick **TRAVIS** or Miranda **RHYNARD**, including:

    a.      lists of customers and related identifying information;

    b.      communications, including text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence in which controlled substances or counterfeit goods are discussed;

    c.      types, amounts, and prices of controlled substances or counterfeit goods as well as dates, places, and amounts of specific transactions;

    d.      any information related to sources of controlled substances



17

or counterfeit goods, including names, addresses, phone numbers, or any other identifying information;

     e.    any information related to the manufacturing of controlled substances or counterfeit goods;

     f.    any information related to the purchase, sale, or possession of firearms;

     g.    any information recording Patrick **TRAVIS** or Miranda **RHYNARD**'s schedule or travel; and

     h.    all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the devices described in Attachment A at the time the things described in the warrant were created, edited, or deleted, including:

     a.    logs, phonebooks, saved usernames and passwords, documents, and browsing history;

     b.    text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

     c.    photographs;

     d.    records of Internet Protocol addresses used; and

     e.    records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages,

search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3.    Contextual information necessary to understand the evidence described in this attachment.

